**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――

IRINA GALANOVA et al.                    19-cv-1451 (JGK)
                    Plaintiff,

                                        <u>OPINION AND ORDER</u>

          - against –

VLAD PORTNOY et al.
                    Defendants.

―――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

     The plaintiffs, Irina Galanova and Peter Gitzis, proceeding
<u>pro se</u>, bring this action against a number of defendants
connected in various ways to a New York State Article 81
Guardianship proceeding.[1] The plaintiffs allege that their rights
were violated when a New York State Supreme Court Justice found
Gitzis to be incapacitated and incompetent, and appointed him a
legal guardian, the defendant Vlad Portnoy. The plaintiffs ask
this Court to find that the state court erred in appointing a
property guardian with broad powers. The plaintiffs request
monetary relief resulting from actions taken by the guardian
with respect to accounts and property owned by the plaintiffs.
The plaintiffs bring this action pursuant to 42 U.S.C. §§ 407,

―――――――――――――――

[1] The defendants in this case are Vlad Portnoy, the Beinhaker Law Firm LLC,
and the Law Offices of Vlad Portnoy, P.C. (the "Portnoy defendants"); Adam
Wilner, Harvey L. Greenberg, and Greenberg & Wilner, LLP (the "Wilner
defendants"); Krysta Berquist, Commissioner Steven Banks, Gili Hershkovich,
David Klein, and Pamela Perel (the "City defendants"); Justice Loren Baily-
Schiffman of the New York State Supreme Court, Kings County; JPMorgan Chase
Bank; Alla and Igor Sherbakov; Emilia Poverin, Kurlene Smith, Johnola
Morales, and Michael Maffai (the "JASA defendants").

1981, 1982, 1985, and 1986; 18 U.S.C. §§ 1951 and 1957; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; the Due Process Clause of the Fourteenth Amendment; and New York state law.

The defendants have moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motions to dismiss are **granted.**

## I.

In defending against a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id. Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d

Cir. 2003); <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." <u>Id.</u> When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the

complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

The pleadings and allegations of a pro se plaintiff must be construed liberally for the purposes of deciding motions pursuant to Rules 12(b)(1) and 12(b)(6). See McKithen v. Brown, 481 F.3d 89, 96 (2d. Cir. 2007); Weixel v. Bd. of Educ., 287 F.3d 138, 145–46 (2d Cir. 2002). The submissions of a pro se litigant should be interpreted to "raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.

The Amended Complaint sets forth the following facts, which are accepted as true for the purposes of deciding these motions.

## A.

In January 2012, Peter Gitzis, a Brooklyn, New York resident, suffered a stroke. Am. Compl. ¶¶ 5, 26. As a result, Gitzis developed "receptive and expressive" language deficiencies, as well as other physical and mental impairments that substantially impacted his everyday life. Id. at ¶¶ 26-27. At the time of his stroke, Gitzis contacted a distant cousin,

Alla Sherbakov, for assistance. Id. at ¶ 28. On January 23, 2012, Gitzis was admitted to Coney Island Hospital, and one week later was transferred to a rehabilitation center. Id.

On February 8, 2012, Gitzis allegedly signed a Power of Attorney in favor of the defendants Alla Sherbakov and her husband, Igor Sherbakov. Id. On February 29, 2012, Gitzis was referred to state Adult Protective Services ("APS") by a social worker due to concerns that he was being "financially exploited by a female, who might have been a distant relative." Id. The referral was rejected because Gitzis was hospitalized without a specified date of discharge. Id. On March 8, 2012, Gitzis purported to replace the Sherbakovs by appointing Galanova as what the Amended Complaint refers to as Gitzis's "Attorney-In-Fact." Id. That same day, Gitzis was released under the care of Galanova, who signed the discharge papers. Id. On March 14, 2012, Gitzis appointed Galanova to be his health care agent. Id. On March 22, 2012, the Sherbakovs referred Gitzis to APS, claiming Gitzis was "being financially exploited" by Galanova. Id.

On February 20, 2013, then-Commissioner of Social Services of the City of New York, Robert Doar,[2] commenced a proceeding

---

[2] The current Commissioner of Social Services of the City of New York, Steven Banks, is named as a defendant in this case. Plaintiffs also name Department of Social Services Psychiatrist David Klein, M.D. and Department of Social Services attorneys Krysta Berquist and Pamela Perel as defendants.

pursuant to Article 81 of the New York Mental Hygiene Law seeking to appoint the Jewish Association Serving the Aging ("JASA") as community guardian of personal needs and property management for Gitzis. Id.[3] On September 12, 2016, Galanova requested a "Fair Hearing" before a New York State Administrative Law Judge to determine if Gitzis was eligible for APS, asserting that Gitzis never received a notice of eligibility determination or notice of fee requirements. Id. at ¶ 36.[4] At the Fair Hearing on March 9, 2017, the New York City Human Resources Administration's Office of Legal Affairs presented a copy of a signed notice of eligibility, dated March 28, 2012. Id. at ¶ 37. The plaintiffs allege that the defendant Krysta Berquist made materially false statements at the Fair Hearing and in the course of the Article 81 proceeding and "is guilty of intentional fraud, deceit and collusion." Id. at ¶¶ 36-45. Sometime thereafter, Gitzis and Galanova were married. Id. at ¶¶ 68, 70.

---

[3] The JASA defendants in this case, Michael Maffai, Johnola Morales, Kurlene Smith, and Emilia Poverin are sued in connection with this appointment.

[4] "A Fair Hearing is a chance for you to tell an Administrative Law Judge from the New York State Office of Temporary and Disability Assistance, Office of Administrative Hearings, why you think a decision about your case made by a local social services agency is wrong. The Office of Temporary and Disability Assistance will then issue a written decision which will state whether the local agency's decision was right or wrong. The written decision may order the local agency to correct your case." New York State Office of Temporary and Disability Assistance, "Fair Hearings," https://otda.ny.gov/hearings/ (last visited December 27, 2019).

On October 12, 2017, Justice Loren Baily-Schiffman of the
New York State Supreme Court, Kings County found that Gitzis
required a Guardian of Property and appointed the defendant Vlad
Portnoy to that position, suspending Galanova's alleged Power of
Attorney.[5] Id. at ¶¶ 50-51. Portnoy thus had alleged authority
over all of Plaintiff Gitzis's real and personal property,
including bank accounts. Id. at ¶¶ 53-55. On March 13, 2018,
Portnoy opened a guardianship account at JPMorgan Chase and two
days later transferred some of Gitzis's assets into that
account. Id. at ¶¶ 54, 60. On June 6, 2018, Justice Baily-
Schiffman issued an order allowing Defendant Portnoy to, among
other things, sell and lease certain properties belonging to
Plaintiff Gitzis. Id. at ¶¶ 53, 55. The plaintiffs allege that
the City fraudulently initiated and prosecuted the Article 81
proceedings. Id. at ¶¶ 32-48. They further allege that Portnoy
and Chase fraudulently controlled the plaintiffs' assets through
the guardianship and unlawfully obtained the plaintiffs'
benefits and marital assets. Id. at ¶¶ 61-68, 75, 78. Finally,
the plaintiffs also allege that the Portnoy defendants and the
City defendants deprived the plaintiffs of their rights and

---

[5] The plaintiffs also name the Law Offices of Vlad Portnoy, P.C. (where
Portnoy serves as a partner) and the Beinhaker Law Firm, LLC (where Portnoy
formerly served as a partner), as defendants in this case. Further, the
plaintiffs name as defendants Adam C. Wilner, Harvey L. Greenberg, and their
law office, Greenberg & Wilner, LLP. The New York State Supreme Court, Kings
County appointed Greenberg & Wilner LLP as legal counsel for Vlad Portnoy.

property in connection with Portnoy's exercise of his guardianship rights in violation of federal law, state law, and state rules of professional conduct. Id. at ¶¶ 78-84.

**B.**

On May 25, 2017, and prior to the appointment of Portnoy as guardian, Galanova and Gitzis initiated an action in the United States District Court for the Eastern District of New York. Galanova v. Roberts et al., No. 17-cv-3179 (E.D.N.Y.). On June 1, 2018, Galanova initiated a second action, based on substantially the same facts, in the United States District Court for the Eastern District of New York, against a number of defendants, this time adding Portnoy as a defendant. Galanova v. Portnoy et al., No. 18-cv-3212 (E.D.N.Y.). Both cases alleged claims substantially similar to those in this case against substantially similar defendants. The federal claims were for violations of 42 U.S.C. §§ 1981, 1982, 1985, and 1986, the ADA, and the Due Process Clause of the Fourteenth Amendment. Judge Chen reserved ruling on the defendants' motion to dismiss the claims brought by Gitzis, but Judge Chen granted the defendants' motion to dismiss the claims brought by Galanova. Galanova v. Portnoy, Nos. 17-cv-3179 & 18-cv-3212, 2018 WL 3824126, at *1, *6 (E.D.N.Y. Aug. 10, 2018).[6]

---

[6] All federal claims brought by Galanova were dismissed on the merits with prejudice, while all state law claims brought by Galanova were dismissed

The plaintiffs commenced this action on February 15, 2019 and filed an amended complaint on May 30, 2019. Gitzis purported to proceed pro se and "by his next friend, Irina Galanova" and Galanova also purported to proceed pro se on her own behalf. Am. Compl. at 1. The plaintiffs assert that the Article 81 proceeding "was entirely without merit from the time of its commencement to the present date." Id. at ¶ 85. They therefore allege that as a direct result of the defendants' conduct, they have suffered monetary damages to their assets and emotional distress. Id. at ¶¶ 86-87.

Many of the defendants moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). The defendants move to dismiss based on a lack of standing, the Rooker-Feldman doctrine, res judicata, and that in any event, no claims are sufficiently pleaded. Additionally, Justice Baily-Schiffman argues she is protected by judicial immunity, Portnoy argues he is protected by quasi-judicial immunity as an appointed guardian, and JPMorgan Chase argues that it was simply complying with a court order.[7]

---

without prejudice to refiling in state court. See Galanova, 2018 WL 3824126, at *6.

[7] Chase also argues that the Southern District of New York is an improper venue for this action. However, it appears that many of the defendants are located in Manhattan and some of the bank accounts at issue were located in Manhattan. Further, no defendant except Chase raises the issue of venue, and therefore the other defendants have waived that argument.

## III.

The defendants make two arguments styled as standing arguments that are rather about the capacity to sue. First, they argue that Gitzis cannot appear _pro se_ in this case because he has been deemed incapacitated by the state court. Second, the defendants argue that Galanova cannot appear on behalf of Gitzis because she is not an attorney.

A plaintiff's capacity to sue is determined "by the law of the individual domicile." Fed. R. Civ. P. 17(b)(1). Under New York law, an individual declared legally incompetent can only appear by his or her guardian. See N.Y. C.P.L.R. § 1201; see also Brewster v. John Hancock Mut. Life Ins. Co., 720 N.Y.S.2d 462, 462 (App. Div. 2001) (holding that an adult incapable of adequately prosecuting or defending his or her rights shall appear by his or her guardian). Portnoy was judicially appointed as Guardian for Gitzis by the New York State Supreme Court, Kings County after Gitzis was found to be incapacitated. Therefore, Portnoy alone may maintain suit on Gitzis's behalf and Gitzis is legally unable to represent himself pro se.[8]

---

[8] Additionally, "once a guardian is appointed for an incapacitated person, litigation against . . . the guardian as representative of the incapacitated person should not proceed without the permission of the court which appointed the guardian." Wright v. Rickards, 942 N.Y.S.2d 153, 154 (App. Div. 2012); see also Terry v. Cty. of Suffolk, N.Y., 654 F. App'x 5, 6 (2d Cir. 2016) (holding that plaintiff's claims against the guardian were properly dismissed because the plaintiff did not obtain permission to sue from the court that appointed the guardian). In this case, Gitzis did not request, and was not granted, permission to commence this action against his court-appointed guardian and is thus barred from bringing suit against Portnoy at this time.

Further, Galanova, as a non-attorney, cannot bring a claim on behalf of Gitzis. Appearances in federal court are governed by 28 U.S.C. § 1654, which permits representation "by an attorney admitted to the practice of law . . . and [ ] by a person representing himself." Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks omitted). However, the statute does not permit "unlicensed laymen to represent anyone else other than themselves." Id. (internal quotation marks omitted); see also Lattanzio v. COMTA, 481 F.3d 137, 139 (2d. Cir. 2007) (per curiam). This principle further extends to non-attorneys' attempts to bring suit on behalf of adults who are not competent to handle their own affairs. See Berrios v. New York City Hous. Auth., 564 F.3d 130, 133 (2d. Cir. 2009). Moreover, Galanova has not made the necessary showing that Gitzis will be best represented by her as a "next friend" because it does not appear that Galanova is acing in "good faith" or "motivated by a sincere desire to seek justice" on Gitzis's behalf given that she has now initiated multiple identical lawsuits that lack merit. See Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist., 873 F.2d 25, 29-31 (2d Cir. 1989) (collecting cases and explaining relevant considerations to determine whether "next friend" representation is appropriate). For this reason, Galanova is precluded from bringing a claim on behalf of Gitzis.

In cases in which the plaintiff is incapacitated, and therefore unable to proceed pro se, and is unrepresented, "the district court must not reach the merits of a claim filed on behalf of an incompetent person who is not properly represented by a suitable guardian and through counsel." James v. New York, 415 F. App'x 295, 297 (2d Cir. 2011); see also Berrios, 564 F.3d at 134-35 (holding that a court should dismiss an incapacitated person's claims without prejudice when he or she is not properly represented). However, it is not necessary at this time to appoint a guardian ad litem because "it is clear that no substantial claim may be brought on behalf" of Gitzis in this case. See Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998) (per curiam). Therefore, Gitzis's claims are properly dismissed without prejudice, whether asserted by himself pro se or by Galanova as his purported "next friend." See Mil'chamot v. New York City Hous. Auth., No. 15-CV-108, 2016 WL 659108, at *3 (S.D.N.Y. Feb. 16, 2016).

However, to the extent that Galanova brings claims for injuries she suffered as a result of damages to marital property belonging to her and Gitzis, she may proceed pro se.

**IV.**

The defendants next argue that the claims are barred by the Rooker-Feldman doctrine and res judicata, and in any event, lack merit.

12

**A.**

The <u>Rooker-Feldman</u> doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." <u>Hoblock v. Albany Cty. Bd. of Elections</u>, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine has four requirements:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.

<u>Vossbrinck v. Accredited Home Lenders, Inc.</u>, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam) (quotation marks and alterations omitted).

In this case, the first and fourth requirements are met. Regarding the first requirement, Gitzis and Galanova "lost" in state court because in those proceedings Gitzis was deemed incompetent and Portnoy, rather than Galanova, was appointed as Gitzis's guardian. <u>See</u> <u>In re Card</u>, No. 12-cv-114, 2012 WL 382730, at *2 n.5 (E.D.N.Y. Feb. 6, 2012) (plaintiff was a state court loser in a state court guardianship proceeding in which she was deemed incompetent). The fourth requirement is met because the judgment in the guardianship proceeding was issued on October 12, 2017 and this action commenced on February 15. 2019. Adelman Decl., Ex. F; Dkt. No. 1.

Further, the second requirement is met because any injuries about which Galanova complains either relate to fraud or misstatements during the Article 81 proceedings or injuries that flowed from the guardianship determination by Justice Baily-Schiffman. The gravamen of the Amended Complaint is that the Article 81 proceeding was tainted by fraud and that as a result of Justice Baily-Schiffman's incapacity ruling and appointment of Portnoy, Galanova suffered subsequent material losses and emotional damages. To the extent that Galanova complains about a fraudulent Article 81 proceeding, namely a fraudulent petition and a fraudulent Fair Hearing, those claims satisfy the second requirement of Rooker-Feldman. See Vossbrinck, 773 F.3d at 427 (claims that a state judgment was wrongfully issued in favor of parties making fraudulent claims is barred by Rooker-Feldman). To the extent that the plaintiffs complain about injuries to their bank accounts and assets that resulted from the actions taken by persons and entities acting under the authority of the guardianship appointment, namely the Portnoy defendants and Chase, those injuries are "caused" by the decisions of the New York State Supreme Court, King County that Gitzis is incapacitated and that Portnoy should be appointed guardian and therefore those claims are also barred by Rooker-Feldman. See Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010) ("[P]laintiff is seeking to undo the 2005 state court

judgment . . . and the complaint can be construed as alleging injuries that occurred as a result of the judgment[.]"), aff'd, 446 F. App'x 360 (2d Cir. 2011); see also Hoblock, 422 F.3d at 88 ("Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge the state judgment that only the Supreme Court can hear.").

Lastly, the third requirement is met because Galanova seeks a review and rejection of the guardianship determination. In this case, Galanova is, in substance, asking the court to determine that Justice Baily-Schiffman erred in her determination that Gitzis is incapacitated and that Portnoy should be the guardian and that therefore all subsequent actions taken in connection with respect to the plaintiffs under the cover of the state guardianship are void. Such relief "would require the federal court to review the state proceedings and determine that the [] judgment was issued in error." Vossbrinck, 773 F.3d at 427; see also Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005). Accordingly, this Court does not have subject matter jurisdiction over the Complaint because the plaintiffs complain either of fraud that was part of the Article 81 proceeding or of injuries sustained as a result of the Article 81 proceeding.

**B.**

Galanova's federal claims also should be dismissed under the doctrine of res judicata because the plaintiffs are attempting to re-litigate claims they lost after a full and fair hearing before Judge Chen in the Eastern District of New York.[9]

"Under the doctrine of res judicata, . . . a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) (internal quotation marks omitted). A claim is precluded where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Rullan v. New York City Sanitation Dep't, No. 13-cv-5154, 2013 WL 4001636, at *2 (S.D.N.Y. Aug 6, 2013) (internal quotation marks and alterations omitted).

In the previous case, Judge Chen dismissed the plaintiffs' federal claims under 42 U.S.C. §§ 1981, 1982, 1985 and 1986, the ADA, and the due process clause with prejudice, which

---

[9] Portnoy argues that both the proceedings before Judge Chen and state court proceedings have res judicata effect in this action. The federal claims in this case are barred by Rooker-Feldman, by res judicata as a result of the proceedings before Judge Chen, and on the merits. The state claims are dismissed without prejudice to refiling in state court. The Court therefore does not need to decide whether the state court proceedings also bar any claims based on res judicata.

constitutes an adjudication on the merits that can give rise to res judicata. See Twersky v. Yeshiva Univ., 112 F. Supp. 3d 173, 179 (S.D.N.Y. 2015), aff'd sub nom., Gutman v. Yeshiva Univ., 637 F. App'x 48 (2d Cir. 2016). The case before Judge Chen involved most of the defendants named in this case, including Portnoy, Berquist, the Beinhaker Law Firm LLC, the Commissioner of the Department of Social Security of the City of New York, and Chase.[10] Moreover, facts underlying this case have not changed between August 10, 2018, when Judge Chen issued her ruling, and the filing of the Complaint in this case. Given that the facts have not changed at all between Judge Chen's ruling and the filing of the Complaint in this case, the plaintiffs had every opportunity to raise their federal claims allegedly brought for the first time in this case under 42 U.S.C. § 407 and 18 U.S.C. §§ 1951 and 1957 before Judge Chen.

Therefore, all of the plaintiffs' federal claims are barred in this case by the doctrine of res judicata. See EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 626 (2d Cir.

---

[10] In this proceeding, the plaintiffs have added defendants not sued in the previous action, namely Justice Baily-Schiffman, the JASA defendants, and the Wilner defendants, who served as Portnoy's lawyers before Judge Chen. In any event, all defendants in this action are entitled to the res judicata effects of Judge Chen's ruling because "[r]es judicata is available to a newly named defendant with a close or significant relationship to a defendant previously sued, when the claims in the new action are essentially the same as those in the prior action and the defendant's existence and participation in the relevant events was known to the plaintiff." Waldman v. Village of Kiryas Joel, 39 F. Supp. 2d 370, 381 (S.D.N.Y. 1999), aff'd, 207 F.3d 105 (2d Cir. 2000)

2007) ("Res judicata does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim.").

## C.

In any event, the federal claims are without merit. Galanova's Section 1981 and 1982 claims are without merit because the plaintiffs do not, and could not, allege that the actions of the defendants were racially motivated. See Galanova, 2018 WL 3824126, at *4; Gomez-Perez v. Potter, 553 U.S. 474, 479 (2008) ("While § 1982 does not use the phrase 'discrimination based on race,' that is its plain meaning."); Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) ("Section 1981 prohibits discrimination based on race in the making and enforcement of contracts[.]").

The Section 1985 and 1986 claims also fail. While discrimination based upon a plaintiff's mental disability is sufficient to state a claim under Section 1985, Galanova does not assert she was personally discriminated against based on her own disability. See Galanova, 2018 WL 3824126, at *5. Further, Galanova's Section 1986 claim is dismissed because no valid Section 1985 claim exists, which is a predicate to a valid Section 1986 claim. See id.; see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).

Moreover, the due process clause claim, construed as a claim for deprivation of property under color of state law in violation of 42 U.S.C. § 1983, also fails as a matter of law. In this case, the only conceivable form of deprivation concerns the allegation that Portnoy allegedly closed the plaintiffs' checking accounts.[11] However, guardians, "although appointed by a court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983." <u>Storck v. Suffolk Cty. Dep't of Soc. Servs.</u>, 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999).[12] Therefore, a claim for deprivation of property under the

---

[11] There is also some allegation of state action in connection with the deprivation of property on the part of Justice Baily-Schiffman. However, she is entitled to absolute judicial immunity because she was acting within the scope of her judicial capacity when she appointed Portnoy as guardian. <u>See Briscoe v. LaHue</u>, 460 U.S. 325, 334 (1983); <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978). This absolute judicial immunity applies unless the judge "acted in the 'clear absence of all jurisdiction.'" <u>Polur v. Raffe</u>, 912 F.2d 52, 56 (2d Cir. 1990) (quoting <u>Stump</u>, 435 U.S. at 357). The complaint alleges no facts to suggest that Justice Baily-Schiffman acted in the absence of jurisdiction. Plaintiff's claims against the defendant Justice Baily-Schiffman are therefore foreclosed by absolute judicial immunity and must be dismissed. <u>See Melnitzky v. HSBC, Bank USA</u>, No. 06-cv-13526, 2006 WL 3728598, at *1 (S.D.N.Y. Dec. 15, 2006).

[12] The Portnoy defendants, although not state actors for purposes of Section 1983, are entitled to quasi-judicial immunity because, as a court-appointed guardian, Portnoy acted at all times as an adjunct of the New York state judicial system. <u>See Dorman v. Higgins</u>, 821 F.2d 133, 137 (2d Cir. 1987) ("[S]ome officials who are not judges but who perform functions closely associated with the judicial process have also been accorded such immunity.") (internal citations and quotations omitted); <u>see also Maldonado v. New York Cty. Sheriff</u>, No. 05-cv-8377, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) ("[P]ersons who faithfully execute valid court orders are absolutely immune from liability for damages in actions challenging conduct authorized by the order.") (internal citations omitted); <u>see also Yapi v. Kondratyeva</u>, 340 F. App'x 683, 685 (2d Cir. 2009) (legal guardian and her director were entitled to quasi-judicial immunity in connection with alleged injuries arising out of decisions issued in family-court proceedings). Moreover, Chase is likely entitled to quasi-judicial immunity as well because it was simply taking

19

due process clause pursuant to Section 1983 may not be
maintained against a state-appointed guardian.

The claims for retaliation under the ADA fail because
Galanova did not allege that an adverse action was taken against
her in connection with Gitzis' guardianship proceedings, rather
than an action against Gitzis himself. See Galanova, 2018 WL
3824126, at *4; see also Treglia v. Town of Manlius, 313 F.3d
713, 719 (2d Cir. 2002) (stating that an adverse action against
the plaintiff is an element of an ADA retaliation claim).

Finally, the new claims in this case, under 42 U.S.C. § 407
and 18 U.S.C. §§ 1951 and 1957, lack merit. A private right of
action does not exist under 42 U.S.C. § 407 and therefore the
plaintiffs may not maintain a cause of action under that
section. See Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491,
501-02 (S.D.N.Y. 2015). To the extent that the claims for relief
under 18 U.S.C. §§ 1951 and 1957 are construed as a claim under
the civil Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. § 1961, et seq., those claims fail because Galanova has
not, and could not, allege a pattern of racketeering activity by
the defendants consisting of two or more acts that are
indictable under Title 18 of the United States Code. See

---

ministerial actions by complying with valid state court orders when it took
the actions with respect to the plaintiff's assets in the guardianship
accounts. See Maldonado, 2006 WL 2588911, at *5.

<u>Brookhaven Town Conservative Comm. v. Walsh</u>, 258 F. Supp. 3d 277, 283 (E.D.N.Y. 2017).

Therefore, all of Galanova's federal claims should be dismissed with prejudice because she has not, and could not, state a cause of action upon which relief could be granted with respect to any of the federal causes of action.

**V.**

A Court may decline to exercise jurisdiction over non-federal claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Whether to exercise supplemental jurisdiction under "is within the sound discretion of the district court." <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 117 (2d Cir. 2013). Having dismissed the federal claims, Judge Chen declined to exercise supplemental jurisdiction over claims arising under New York state law because the balance of factors of judicial economy, convenience, fairness, and comity pointed away from exercising jurisdiction. <u>See</u> <u>Galanova</u>, 2018 WL 3824126, at *8. For the same reasons that Judge Chen declined to exercise supplemental jurisdiction over the state law claims, this Court declines to exercise jurisdiction over the state law claims in this case. Accordingly, the state law claims are dismissed without prejudice to refiling in state court.

Finally, several defendants argue that Galanova is a vexatious litigant and should be enjoined from filing further suits in this district without prior approval. In determining whether to restrict a litigant's future ability to sue, a court must consider "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). Safir instructs that in determining whether or not to restrict a litigant's future access to the courts, judges should consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Id. In Safir, for approximately 20 years, the plaintiff sought redress in the federal courts for pricing practices of the defendants, which occurred in 1965 and 1966. Id.

Portnoy in particular complains that Galanova's history of litigating cases as a co-plaintiff with Gitzis has led to a diminution of Gitzis's assets and harassment of the Portnoy defendants. Galanova's conduct has not risen to the level of

22

vexatious litigation necessary for issuance of an anti-suit injunction. She has, by the Court's count, initiated litigation implicating Gitzis's incapacitation and guardianship twice in the Eastern District of New York before Judge Chen which Judge Chen consolidated into one matter, once more before this Court, No. 19-cv-7545 (JGK) (S.D.N.Y.), and once before Judge Broderick, No. 17-cv-4915 (VSB) (S.D.N.Y.).[13] That record is insufficient at this time to issue an anti-suit injunction against Galanova.

**CONCLUSION**

The Court has considered all the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

For the reasons stated above, the defendants' motions to dismiss the plaintiffs' claims are **granted.** All claims brought by Gitzis are **dismissed without prejudice.** The federal claims

---

[13] The case before Judge Broderick was also brought by Galanova and Gitzis against a number of defendants. That case was brought under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., and state law. Just as in the cases before this Court and before Judge Chen, Judge Broderick was forced to adjudicate questions about Galanova's and Gitzis's ability to bring suit in light of the guardianship proceeding in which Portnoy was appointed as Gitzis's guardian. See Galanova v. Adam Leitman Bailey, P.C., No. 17-cv-4915, 2018 WL 9489252 (S.D.N.Y. Oct. 12, 2018). Litigation before Judge Broderick appears to be ongoing.

brought by Galanova are **dismissed with prejudice**. The state claims brought by Galanova are **dismissed without prejudice** to refiling in state court. The Clerk is directed to close all pending motions and to close the case.

**SO ORDERED.**

**Dated:**  **New York, New York**
**January 13, 2020**          _____/s/ John G. Koeltl_____
                    **John G. Koeltl**
                    **United States District Judge**